THE STATE OF OHIO *v.* GLASS.

(Nos. 83CR-5050, -5051 and -5077—
Decided August 2, 1983.)

Court of Common Pleas of
Clermont County.

*Mr. David Feldhaus,* for plaintiff.
*Ms. Susan German* and *Mr. Allen
Burreson,* for defendant.

RINGLAND, J. On the afternoon of January 9, 1983, Officer Horn of Goshen Township received a telephone call from his dispatcher indicating that there was an alleged breaking and entering into or trespass upon a mobile home. The dispatcher had received a call from third parties who undisputedly appear to be the sister and mother, respectively, of the defendant, Gary Glass.

Upon receiving this information, Horn in good faith went with another officer to the mobile home and knocked upon the door. At that time Jeanne Gibson, girlfriend of the defendant, opened the door. Following Gibson's initial discussions with the officer, the defendant came to the door and consented to the officers' coming in.

Upon the officers' entering the mobile home, Horn noticed a Clermont National Bank deposit bag and its contents. The contents were within plain view of the officer. Horn had experience identifying all drugs; he indicated he noted a large quantity of three types of Valium: two milligram, five milligram and ten milligram tablets. The other officer (Officer Slemmer) also noticed a box containing the wording "Hypodermic Needles." Horn also observed a spoon in the hand of the defendant containing a white substance.

Horn then proceeded to take control of the bank bag, and upon doing so, saw several hypodermic needles on the floor of the mobile home.

Slemmer was then left to guard the items of suspected contraband, at which time a search warrant was procured by Horn. The search warrant and affidavit were written by Officer Stephens of the Drug Enforcement Force, a county-wide force used to consolidate drug enforcement. Horn signed the affidavit, however. The affidavit was then taken to E. Robert Schaeffer, Judge of the County Court. There is no evidence that any inordinate or intentional time delay was caused by the officers. The search warrants were signed by Judge Schaeffer.

The officers noted, however, back at the Goshen Police Station before serving the search warrant, that one of the copies had not been signed by Judge Schaeffer. At that time, the copy was returned to the judge for his signature; this resulted in a time delay. Upon receipt of all copies of the search warrant, the search was finally carried out in the evening hours.

Assuming, *arguendo*, that the defendant had a proprietary interest in permitting the officer to enter the mobile home, there was consent given freely and voluntarily based upon the surrounding circumstances. The officer correctly followed the procedure at that time by not seizing the contraband, and the court finds that moving it out of the possession and control of the defendant is not a *per se* seizure. The officer then correctly left the scene, keeping the contraband under guard, and obtained a search warrant which was properly executed.

The issue raised by defendant is whether the failure of the magistrate to indicate "nighttime search" on the warrant in and of itself invalidates an otherwise proper search.

Exhibit 1 indicates that the phrase "search in the day/nighttime" exists on the form; one of the two words has to be crossed out or circled.

*State* v. *Eichhorn* (1975), 47 Ohio App. 2d 227 [1 O.O.3d 301], determined that a search order to be conducted at night rather than in the daytime cannot be found to have been improperly ordered unless the complaining party demonstrates an abuse of discretion. See, also, *State* v. *Krout* (1982), 6 Ohio App. 3d 5.

"The legislative" intent of Crim. R. 41 appears to be to prevent officers from having a search warrant executed in the daytime and then intentionally waiting to enter the premises and seize the property at dark enhancing the confusion and creating a great risk to all parties including the police officers as well as the occupants.

This case, however, differs in that here an officer was on the scene guarding the property; the occupants were apprised of future searches to be conducted and the situation was controlled so that physical harm could not occur to either the officers or the occupants. The officers did not obtain the warrant and then wait to enter the property at darkness; the time delay was in good faith.

Assuming, *arguendo,* that there technically was a defective search warrant, the rationale of *United States* v. *Williams* (C.A. 5, 1980), 622 F. 2d 830, certiorari denied (1981), 449 U.S. 1127, and *Richmond* v. *Commonwealth* (July 1981), Ky. App. No. 80-CA-1366, unreported, is persuasive. These courts have found, and the rule is developing that, while an arrest may be technically improper, the deterrent function of the rule of exclusion is outweighed by the substantial societal costs of the application, *i.e.,* the balancing test is used. The balancing test is used when an officer in good faith makes a seizure; if it is in good faith the technical defects do not vitiate the search itself.

Therefore, the court finds that the defendant did not have a proprietary interest and could not object to any entrance of the officer. Further, assuming that the defendant did have a proprietary interest, he gave consent to enter.

Crim. R. 41 is not violated by the failure of Judge Schaeffer to delineate the nighttime search, and based upon the circumstances of this case, the search was properly conducted.

Also, assuming that there was a procedural technical defect in the search warrant, the case holdings, *supra,* indicate that the balancing test controls and this court will so follow that rationale.

Therefore, the motion to suppress is denied.

*Motion to suppress denied.*